**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leonard D. MORRIS, Defendant-Appellant.**

**No. 592, Docket 78–1357.**

United States Court of Appeals, Second Circuit.

Argued Jan. 23, 1979.

Decided April 25, 1979.

Barry Bassis, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City), for defendant-appellant.

Glenn B. Kritzer, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Eastern Dist. of New York, Mary McGowan Davis, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff-appellee.

Before LUMBARD, FEINBERG and MESKILL, Circuit Judges.

PER CURIAM:

Leonard D. Morris appeals from a judgment of conviction, entered upon his plea of guilty to bank robbery in violation of 18

U.S.C. § 2113 and conspiracy to commit that offense, in the United States District Court for the Eastern District of New York before Judge Eugene H. Nickerson. The only question on appeal is whether the district court properly denied appellant's motion to suppress confessions which he gave to FBI agents. The court's opinion on the motion is reported at 451 F.Supp. 361.

On January 19, 1978, New York City police officers were waiting at an intersection in Staten Island for Charles Morris (no relation to appellant), who was wanted for burglary. A vehicle which they believed to be driven by Charles Morris approached the intersection and then made a U-turn and drove away from the police cars at a high speed. After a chase, Charles Morris fled the car and was arrested by the detectives. Appellant Leonard Morris, who was a passenger in the car, also was arrested and both were taken to the precinct house. Questioning of Charles apparently began sometime after 4:00 p. m. and during the interrogation he admitted to committing five robberies and the bank robbery at issue here, and he implicated Leonard in three of the robberies, including the bank robbery. Questioning of Leonard began around 4:30 p. m. and was conducted by different officers from those questioning Charles. Thereafter, Leonard confessed to a supermarket robbery and agreed to talk to the FBI.

After the arrests the police officers showed a photograph of Leonard Morris to a witness of the supermarket robbery and the witness identified him as a participant in that robbery. Later in the evening Leonard was identified in a lineup as one of the supermarket robbers.

FBI agents began questioning Charles in the evening and he signed a confession implicating himself and Leonard in the November 4, 1977 robbery of the Community National Bank. The FBI began questioning Leonard sometime after 11:00 p. m.; thereafter, he confessed to the Community National Bank robbery and to two other attempted bank robberies.

Judge Nickerson found that there was no probable cause to arrest Leonard Morris when the police caught the car in which he was a passenger and arrested the driver, Charles Morris. However, the judge refused to suppress the confessions made while Leonard was in custody because he found that the statements were not made as a result of "exploitation" of the illegal arrest. He ruled that the police obtained probable cause to arrest and detain Leonard when a witness identified him from a photograph as one of those in the supermarket robbery. Relying on *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), Judge Nickerson ruled that this subsequent probable cause purged the initial illegal arrest.

We believe that further fact findings would be helpful on the issue whether the police had probable cause to detain Leonard Morris, independent of the arrest which Judge Nickerson found to be unlawful. Thus we remand the case to the district court for reconsideration, after further findings, with respect to:

1. (a) Whether the photograph of Leonard Morris from which he was identified as a perpetrator of the supermarket robbery, was first obtained after, and as a result of, his arrest on January 19, 1978, or was already possessed by the Police Department; and (b) whether, as appellant argues to us, the identification of Leonard Morris by the witness to the supermarket robbery "stemmed from [Leonard Morris's] arrest," see 451 F.Supp. at 366.

2. (a) Whether, prior to Leonard Morris's confession to the supermarket robbery, Charles Morris had given a statement implicating Leonard Morris which supplied probable cause to arrest Leonard Morris at that time, and (b) if so, whether the detective questioning Leonard Morris knew of this fact during the interrogation.

Despite the views of our dissenting brother, we do not think it appropriate to reach the issues discussed in his opinion until the district court has clarified the facts to the extent possible. After further findings and reconsideration by the district court, either party may reinstate this appeal by letter to the clerk of this court, and, if practicable, the appeal will be heard by this panel.

Case remanded for further proceedings consistent with this opinion.

LUMBARD, Circuit Judge (dissenting):

I dissent. I would affirm the conviction as I see no need for requiring the district court to make further findings.

While the exact chronology of events leading to Leonard Morris' confession to the FBI is somewhat uncertain, it is sufficiently clear that Leonard Morris' detention was for good reason, that the police acted with proper dispatch, and that Leonard Morris' statements were made voluntarily to the police and later to the FBI. There is no showing that Leonard Morris' constitutional rights were violated and I find no error in Judge Nickerson's denial of the motion to suppress.

On January 19, 1978, a group of six New York City detectives and police officers were waiting at York and Van Tuyl Streets in Staten Island for Charles Morris who was wanted for robbery and for burglary. (Leonard Morris and Charles Morris are not related by blood). Shortly after 12 o'clock noon the police saw a black sedan which they believed Charles Morris was driving, coming toward them on York Street. When the car stopped suddenly, made a U-turn and sped away, they gave chase. After going a few blocks, Charles Morris who was driving the car got out and ran. After a chase, Charles was caught by Detectives Wilk and DeGise and arrested for burglary.

The other passenger was Leonard Morris. The exact manner of his apprehension is unclear. Although Charles testified that he and Leonard got out at the same time, there was hearsay testimony that when Leonard was told by Sergeant Carney to get out of the car, he held the door shut.

Leonard and Charles were then taken to the 122nd precinct station house where they arrived about 1:30 P.M. Charles was advised of his *Miranda* rights but was not questioned until sometime after 4:00 P.M. after he had again been advised of his rights. Charles then admitted five armed robberies and a bank robbery. He implicated Leonard in three of the robberies: the

Acme Supermarket robbery, the Savon Drugs robbery, and the Community National Bank Robbery.

About 4:30 P.M. Leonard was advised of his *Miranda* rights. He said he understood them, signed his consent, and said he was willing to answer questions. According to Detective Siersema, about an hour later he signed a statement confessing to the robbery of the supermarket "by the mall" (the Acme Supermarket). He then said he was willing to talk to the FBI.

Sometime during the afternoon, a witness to the Acme Supermarket robbery identified, from a photospread, Leonard Morris as one of the participants in that robbery. Although the government argues that this took place before Leonard was questioned, Siersema seemed somewhat uncertain as to the sequence of events. However, I think nothing turns on the exact time when this identification occurred. In any event, at four separate lineups between 7:30 P.M. and 10:30 P.M., Charles and Leonard were identified as perpetrators of the robberies of the Acme Supermarket and Sedutto's Ice Cream store.

Two agents of the FBI arrived at the station house about 8:00 P.M. and questioned Charles, after advising him of his rights. The confession he then signed implicated Leonard as an armed accomplice in the Community National Bank robbery on November 4, 1977. After 10:00 P.M., FBI agents Carrig and Scott, who were assigned to the investigation of the Community National Bank robbery, arrived at the station house. Leonard said he wished to talk to the FBI after he had talked to Charles. Leonard did talk privately with Charles and again said he wished to talk to the FBI. He then executed a waiver of rights form. During the next few hours after 11:00 P.M., Leonard confessed to the Community National Bank robbery on November 4, 1977 and to two other bank robberies in all of which he also implicated Charles Morris. Thereafter Leonard signed six separate statements.

Although Judge Nickerson found that Leonard had been unlawfully arrested, he refused to suppress Leonard's statements

on the ground that those statements were made after the time when the police had independent probable cause to detain Leonard and therefore during a period of legal detention. Judge Nickerson found that Leonard's statements were not obtained by exploitation of the underlying illegality because a witness to the supermarket robbery identified Leonard as one of the perpetrators of the robbery before Leonard was questioned, thereby legitimating the subsequent detention and questioning quite apart from the question of the legality of the underlying arrest. This identification "in no sense stemmed from the arrest". Since the intervention of a willing witness purged the primary taint, Judge Nickerson concluded that Leonard's statements were admissible at trial. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). That Leonard had been held in continuous custody did not alter the result, since there would be no point in requiring the police to release and then rearrest Leonard. He added that under the circumstances suppression of Leonard's statements would be "a dubious deterrent not justified by the cost it would exact in the administration of justice." *See Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

Although I agree with Judge Nickerson that the taint of any primary illegality was purged rather than exploited prior to the time of Leonard's statements, and that suppression here would not advance the deterrent policies of the Fourth Amendment, but would impose an unreasonable burden on efficient and reasonable police work, I would affirm the conviction for another reason as well.

In my opinion, there was sufficient probable cause to justify the apprehension and detention of Leonard Morris until further inquiries could be made. Leonard Morris was riding as a passenger in a speeding car with a man wanted by the police for burglary and bank robbery, who was known to use accomplices. These circumstances imposed upon the police a duty to ascertain, as promptly as possible, whether Leonard was one of Charles' unidentified accomplices. It would be unreasonable to require the police to free Leonard Morris in such a situation, with the uncertainty of being able to apprehend him again when they had confirmed their suspicions. Since the police acted expeditiously, and with the least intrusion possible, I would hold that their conduct was reasonable under all the circumstances; I find no primary illegality such as would require suppression of Leonard's statements.

Where the facts are undisputed, as here, we are not bound by a district court's ruling on a question of law, such as whether admitted facts constitute probable cause. Accordingly, we can affirm a district court decision on the basis of a construction of law which was not relied upon by the district court. *A fortiori*, we can affirm on the basis of our own reading of the law and on the basis of the district court's conclusions, as I believe we should do here. Especially since the district court has already found that the identification of Morris to the supermarket robbery "in no sense stemmed from the arrest," I do not believe that any useful purpose would be served by remanding for further factfinding.