171 N.J. Super. 543 (1979)
410 A.2d 259
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD BARRY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1979.
Decided December 28, 1979.
*544 Before Judges LORA, ANTELL and PRESSLER.
Randall W. Westreich, designated counsel, argued the cause for appellant (Stanley C. Van Ness, Public Defender, attorney).
John L. Whalen, Assistant Essex County Prosecutor, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Donald S. Coburn, Prosecutor of Essex County, of counsel).
The opinion of the court was delivered by PRESSLER, J.A.D.
Edward Barry appeals his conviction of felony murder and conspiracy to commit armed robbery. We are constrained to reverse.
These convictions arise out of the armed robbery of the First Federal Savings and Loan in Montclair on January 12, 1976. The dramatis personae involved in the crime were Mark Jackson, Archie Murphy, defendant and defendant's brother Walter Barry. The plan was for Jackson to actually enter the bank and hold it up, for Walter Barry to cover Jackson immediately outside the bank and for defendant to wait in and drive the getaway car which was parked some short distance away. The three were then to return to Murphy's East Orange apartment from whence the expedition originated to divide the proceeds. The terrible tragedy of this event, which took place generally according to plan, was that Jackson while in the bank shot and killed a Montclair police officer.
*545 On the day following the robbery the Montclair Police Department received a telephone call in which the anonymous caller described the automobile used in the holdup. That information was immediately teletyped to law enforcement agencies and on the same day an automobile answering that description and being operated by Walter Barry was stopped by the East Orange Police Department. Walter was taken into custody by the East Orange police, interrogated and returned to Montclair. Jackson was identified by the bank's video tape and a warrant issued for his arrest. Thereafter, a warrant was issued for Murphy's arrest. On the evening of January 15, 1976, three days after the robbery, Detective Flaminio of the Essex County Prosecutor's homicide squad, accompanied by a squad investigator and two Montclair police officers, went to Murphy's East Orange apartment to execute this warrant. When they arrived Flaminio saw defendant standing in a group of about five other people and two small children in front of the apparently rather large apartment building in which Murphy resided. Recognizing him from his investigation of a year earlier of another robbery, Flaminio immediately placed defendant under arrest, gave him his Miranda warning and arranged for his transport to a jail facility in Glen Ridge. Neither Flaminio nor anyone else appears to have interrogated him at that time. After the arrest of defendant, Flaminio proceeded to execute the Murphy warrant.
A search of Murphy at the jail revealed his possession of a five dollar bill taken from the bank during the robbery. Sometime thereafter, in the early morning hours of January 16, Murphy gave the police a statement not only incriminating himself but also identifying defendant as the driver of the getaway car. This was the first implication of defendant since Jackson and Walter Barry, although they had previously given statements, had implicated only themselves and each other.
Some hours following Murphy's statement, after defendant had been in custody for some 17 or 18 hours, he was transported *546 from the Glen Ridge jail to Montclair where he was questioned, apparently for the first time since his arrest. The two Montclair police officers who were conducting the interrogation iterated the Miranda warnings and told defendant that the other three participants had given written statements and that he, defendant, had been implicated. Thereupon, defendant admitted his participation and agreed to give a full statement.
Defendant's primary ground of appeal is that the trial judge erred in admitting his own inculpatory statement into evidence. It is his contention that his warrantless arrest was illegal since, at the time he was arrested, the arresting officer had no probable cause to believe that he, defendant, was in any way at all connected with the bank hold-up or indeed any other crime. If the arrest was illegal, he argues, then the confession obtained as a result thereof is the classical "fruit of the poisonous tree" and is itself inadmissible. See Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
We have no doubt that defendant's general contention is a correct statement of constitutional law. If Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), could possibly be read as having failed to definitively settle the issue, there is nothing in the slightest degree ambiguous about the holding of Dunaway v. New York, 442 U.S. 200, 219, 99 S.Ct. 2248, 2260, 60 L.Ed.2d 824, 840 (1979). Dunaway stands unequivocally for the principle that if a warrantless arrest lacks probable cause, a confession resulting from that arrest is inadmissible and remains inadmissible despite any solicitude shown for defendant's rights by the police following the illegal arrest. As succinctly articulated by Dunaway, supra, the Constitution does not permit "law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the `procedural safeguards' of the Fifth."
The threshold issue, therefore, is whether defendant's warrantless arrest by Flaminio was based on probable cause. *547 Our scrutiny of the record constrains us to disagree with the trial judge's conclusion that there was a showing of probable cause here. In our view a structure supporting probable cause cannot be erected on the basis of the officer's prior acquaintance with defendant resulting from a year-old robbery investigation and, even if known to the officer, defendant's relationship to and friendship with the other participants in the Montclair hold-up. We are aware of no attempted definition, however elastic, of the elusive concept of probable cause  that state of knowledge and belief which is more than suspicion but less than sufficient evidence to sustain a conviction  which can be stretched sufficiently to encompass what was here virtually no more than an officer's instinctive but factually unsupported response to a familiar face, linked to the crime under investigation by nothing more than sheerest conjecture. See, e.g., Wong Sun v. United States, supra; Brown v. Illinois, supra; State v. Davis, 50 N.J. 16, 22-24 (1967), cert. den. 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968). Cf. State v. Bradshaw, 170 N.J. Super. 527 (App.Div. 1979).
Since we are persuaded that the arrest was illegal, the inadmissibility of the confession necessarily follows, provided that no "intervening events broke the connection between [defendant's] illegal detention and his confession." Dunaway v. New York, supra. The State argues that Murphy's confession, which provided the first link between defendant and the crime, constituted just such an intervening event. We are unable to agree. Whether or not an illegal arrest effectively produces an ensuing confession cannot be determined by the successful progress of the police investigation after the arrest but before the confession. The capacity for undermining the essence of Fourth Amendment protections inherent in such an approach is as obvious as it is infinite. Rather than deterring arrests based on the rawest unfounded suspicion, it would encourage such arrests by assuring the police that illegal arrests would be retrospectively validated so long as subsequent investigation *548 turned up facts which, if known at the time of the arrest, would have provided probable cause therefor. Furthermore, we are satisfied that the cause and effect relationship between the arrest and the confession clearly depends on a defendant's perception of his situation rather than upon the perceptions of the police. Defendant here was arrested and kept incommunicado for 18 hours. At the end of that time he was interrogated and told he had been implicated by an accomplice. From his point of view there was no intervening event but rather only an uninterrupted intensification of his perception of his peril. Thus, we cannot but conclude that the illegality of the arrest here must be deemed to have produced the confession and to have irretrievably tainted it. Compare People v. Scott, 600 P.2d 68, 69 (Colo.Sup.Ct. 1979); People v. Misuis, 47 N.Y.2d 979, 981, 419 N.Y.S.2d 961, 963, 393 N.E.2d 1034, 1035 (Ct.App. 1979); People v. Vese, 100 Misc.2d 8, 417 N.Y.S.2d 1015, 1022 (Sup.Ct. 1979).
Since our holding in respect of the confession requires that defendant be retried, we address those additional issues defendant here raises which are likely to reoccur. Defendant urges first that the judge erred in refusing to admit into evidence the statements of his brother and Jackson which tended to exculpate him. Jackson's confession stated that only he and Walter Barry were in the car during the robbery, that Walter Barry had driven it and that no one else was present either in the car or at the bank. Walter Barry's statement was of similar import. Both unequivocally stated that no one other than they participated in the crime. We are unable rationally to distinguish the facts here from those underlying the holding of State v. Abrams, 140 N.J. Super. 232 (App.Div. 1976), aff'd o.b. 72 N.J. 342 (1977), which required admission of similar accomplice statements. We are bound by the Supreme Court's affirmance of this court's view of Evid.R. 63(10) even though we recognize the cogency of the State's argument that it is not necessarily against a declarant's interest to exculpate one defendant while *549 inculpating himself. Accordingly, on the retrial defendant will be entitled to introduce this evidence on his behalf.
Defendant further argues that the prosecutor's actions denied him a right to a fair trial, that the trial judge himself failed to conduct the trial in an impartial manner and that his right to confrontation was violated by the prosecutor's improper elicitation of testimony that a nonwitness coconspirator had implicated defendant. Our review of the record, however, satisfies us that each of these issues is clearly without merit. R. 2:11-3(e)(2). We do not address defendant's challenge to the sentence, namely, that the consecutive nature of the sentence on the conspiracy charge was unduly punitive and manifestly excessive. In any event, defendant will have to be resentenced if he is convicted on the retrial.
Reversed and remanded for a new trial.