729 A.2d 31

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RANDOLPH WHITE, A/K/A KEVIN GREEN,
DEFENDANT–APPELLANT.

Argued November 10, 1998—Decided May 26, 1999.

*Alan I. Smith,* Designated Counsel, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney).

*Daniel I. Bornstein,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

HANDLER, J.

The defendant in this case was convicted on charges arising from an armed robbery and assault committed by several persons. Prior to trial, one of the perpetrators confessed to participating in the crimes and contemporaneously stated that the defendant was not involved. At trial, portions of the perpetrator's confession

exculpating the defendant from the crime were excluded from evidence, while the balance of the confession, which directly incriminated the declarant, was admitted. The Appellate Division affirmed the defendant's conviction. We granted certification. 153 *N.J.* 217, 708 *A*.2d 68 (1998).

We consider the main issue on appeal to be whether portions of an incriminating statement by a declarant that exculpate the defendant constitute admissible statements against interest. Closely related to that issue, and the basis for the Appellate Division's holding, is whether omission of the exculpatory evidence in this case, if error, was capable of producing an unjust result.

I

As Terrence Morris was returning from work early in the morning of September 24, 1994, he walked by a group of men whom he recognized from the neighborhood, having passed them nightly on his way home. Several of the men approached Morris, then assaulted and robbed him. One placed Morris in a choke-hold from the rear. Another put a silver gun in Morris's face and struck him across the nose with it. A third went through Morris's pockets. Morris faced his assailants as they prepared to leave and asked, "why?" The man wielding the handgun struck Morris again in the eye.

Morris called the police. Officers Timothy Legowski and James Hatter of the Jersey City Police Department responded shortly after six o'clock in the morning, and Morris told them of the assault and robbery. With Morris in the back of the squad car, the officers searched the immediate neighborhood. When Morris recognized his attackers within a group of six or seven men in front of a house on Bramhall Avenue, Legowski and Hatter stopped the car and pursued members of the dispersing crowd.

The officers found defendant Randolph White hiding in a nearby lot. Morris identified White as the man who had choked him. Frank Williams and another, Sharone Smith, were discovered under the porch of a neighboring house; a silver gun was nearby.

Morris identified the gun as the one used in the robbery, and recognized Williams as the gun carrier, but was unable to identify Smith. Consequently, White and Williams were arrested. Smith was released.

On November 29, 1995, prior to trial but more than a year after the crime, Sharone Smith confessed his involvement in the Morris robbery. Smith initially gave an oral statement, which was memorialized in writing and signed by Smith the same evening. At the time Smith made the statement, he was incarcerated at Kearny Correctional Institution, having pled guilty in May of 1995 to an aggravated assault that had occurred roughly two weeks before the robbery of Morris. Smith not only admitted his own participation in the robbery and assault of Morris, he also stated that White had nothing to do with the crime and that Morris's identification of White as one of the assailants was a mistake. Smith acknowledged that he was making the statement "because Randolph [White] shouldn't get in trouble for something he did not do."

Randolph White and Frank Williams were tried together. The State's case relied on testimony by the victim and the police officers involved that was inconsistent in many respects. In court, Morris said he passed "three, maybe four" men standing on a porch; Officer Legowski testified, however, that Morris told him that he had seen six or seven men on the porch. Testimony also differed as to the number of men who actually assaulted Morris: "About three" was Morris's testimony at trial. Officer Legowski, who responded to Morris's call for help, testified that Morris told him that he was attacked by "approximately six" men. A defense investigator who spoke with Morris within two weeks of trial testified that Morris told him "he was robbed by two people." Morris also seemed uncertain about what had been stolen. At trial, he claimed twenty dollars were taken, along with a shoulder bag containing work clothes and an additional sixty dollars. Officer Legowski testified both at trial and in a pre-trial hearing that Morris told him the assailants took sixty-seven dollars. Morris's

identification testimony of White and Williams fluctuated as well. Morris initially identified White as the choker and Williams as the gunman, and confirmed this identification at the holding cell. At trial, however, Morris recalled that Williams had placed him in a choke-hold while White threatened and beat him with the gun.

White presented an alibi in defense. Defendant claimed that he and three friends drove to Brooklyn from Jersey City to buy marijuana on the morning of the crime and returned between six and six-thirty in the morning. On their return, they parked the car and began walking toward White's aunt's house when they were approached by Williams, who was coming from his girlfriend's home. They then encountered acquaintances Sharone Smith and Tavonne McMillan. Smith and McMillan, White testified, were bragging about the robbery they had just committed. Shortly thereafter, the police drove by with Morris. Defendant claimed he ran upon seeing the police because he was carrying marijuana. He alleged that he was detained by the police, not because Morris identified him, but because he was carrying drugs. White's account was corroborated by David Stackhouse and Gardell Price, two of the men who allegedly accompanied defendant to New York. (The other man, whom defendant, Stackhouse, and Price all identified as Abdul Webster, did not testify.)

Defendant sought to further substantiate his account by introducing the confession made by Sharone Smith. Because Sharone Smith did not testify at trial, having invoked the privilege against self-incrimination, White presented Smith's written statement through Gerald Robbins, the investigator retained by the defense who obtained the statement from Smith on November 29, 1995. Smith's statement and the investigator's testimony regarding that statement were hearsay, and were offered as a declaration against penal interest. The court admitted only those portions of Smith's written and oral statements that explained Smith's own involvement in the robbery and assault.[1] The court barred those por-

---

[1] The admitted relevant portion of Smith's written statement read as follows:

tions of the statement that explicitly disclaimed White's involvement in the crime, including Smith's explanation that defendant "had just come back from New York and he had nothing at all to do with the robbery. He was just picked up by the police because he ran." [2] The court viewed the admitted portions as "the nucleus

Q. In your own words can you tell me what if anything occurred on September 24, 1994?

A. Yes, on September 24, 1994, me and Tavonne McMillan were walking on Lexington when we seen this man sleeping on a porch. Tavonne McMillan and some young boys walked up to the man and cut his pockets and robbed him. There was a bag by the man, and Tavonne took the man's hockey jersey and one of the others took the man's polo jacket.

\* \* \*

Q. What were you doing when this happened?

A. When Tavonne and the others were robbing the man, I stood on the corner as the lookout.

Q. After robbing the man what did the group do?

A. Well we went over to Bramhall and started smoking weed. Me and Tavonne saw Randolph White, Frank Williams, and some others and we started talking with them about what we had just done.

Q. What happened to the items that were stolen from the man?

A. Tavonne put on the man's hockey jersey which he just stole and was wearing it around while we were smoking.

\* \* \*

Q. What happened next.

A. Well, while we were standing on Bramhall, the guy we robbed walked past us and headed towards Jackson. A little while [sic] he came back with police and we all ran. I ran behind 622 Bramhall with Frank Smith [sic] but the police caught Frank and then Frank told me to come out which I did
. . .

2 The court declined to admit the following portion of Smith's statement:

A. . . . We were all brought down to the police station including Randolph White who had nothing to do with the robbery. I know cause he had just come back from New York. When I was in the police station the man who was robbed was arguing with me thinking I was with Tavonne because me and Tavonne were both wearing dredlocks (indicating hairstyle). The police never caught Tavonne. When I opened my jacket and showed the man that I wasn't wearing any of his clothes he thought I wasn't involved and I was able to get released. Me and Tavonne were never charged even though we did it.

Q. What if any was Randolph White's involvement?

of [the] inculpating statement," and reasoned that "all other things" in the statement were "superfluous."

At the conclusion of trial, the jury found White and Williams each guilty of one count of armed robbery, *N.J.S.A.* 2C:15–1; five counts of aggravated assault, *N.J.S.A.* 2C:12–1b(1),(2),(3),(4); one count of unlawful possession of a handgun, *N.J.S.A.* 2C:39–5b; and one count of possession of a handgun for an unlawful purpose, *N.J.S.A.* 2C:39–4a. The court denied White's post-verdict motion for judgment of acquittal. At White's sentencing, the court found no mitigating factors and four aggravating factors—*N.J.S.A.* 2C:44–1a(1) (nature and circumstances of offense); *N.J.S.A.* 2C:44–1a(2) (gravity and seriousness of offense); *N.J.S.A.* 2C:44–1a(6) (prior criminal record); *N.J.S.A.* 2C:44–1a(9) (need for deterrence). White was sentenced to an aggregate term of twenty-six years imprisonment with nine years of parole ineligibility.

White appealed, arguing that the redaction of portions of Smith's out-of-court confession exculpating White from the robbery and assault was reversible error. White also challenged the adequacy of the identification evidence presented at trial, and the court's jury instruction with regard to that evidence, as well as the length of his prison term. Williams also appealed, raising some of the same issues. The appeals were consolidated for review.

The Appellate Division affirmed both convictions. Any error in the trial court's redaction of Smith's statement, the court held, was harmless. The appellate court further indicated its belief that the redacted portions of the statement were properly excluded by the trial court as a matter of sound discretion. The court dismissed White's challenges to the identification testimony, the jury charge, and his sentence as without merit.

---

A. Like I said, Randolph had just come back from New York and he had nothing at all to do with the robbery. He was just picked up by the police because he ran.

## II

### A.

■ Out-of-court statements offered to prove the truth of the matter asserted are hearsay. *N.J.R.E.* 801. Hearsay evidence, considered untrustworthy and unreliable, is generally not admissible at trial. *N.J.R.E.* 802. Occasionally, however, exceptions are created out of necessity and are justified on the ground that "the circumstances under which the statements were made provide strong indicia of reliability." *State v. Phelps,* 96 *N.J.* 500, 508, 476 *A.*2d 1199 (1984); *see Williamson v. United States,* 512 *U.S.* 594, 598, 114 *S.Ct.* 2431, 2434, 129 *L.Ed.*2d 476, 482 (1994). One such exception is made for a declaration or statement against interest,

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary, proprietary, or social interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid declarant's claim against another, that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true.
>
> [*N.J.R.E.* 803(c)(25).]

■ The statement-against-interest exception is based on the theory that, by human nature, individuals will neither assert, concede, nor admit to facts that would affect them unfavorably. *See* Bernard S. Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule,* 58 *Harv. L.Rev.* 1, 8 (1944); *see also Williamson, supra,* 512 *U.S.* at 599–600, 114 *S.Ct.* at 2435, 129 *L.Ed.*2d at 482–83 (construing *Fed.R.Evid.* 804(b)(3)). Consequently, statements that so disserve the declarant are deemed inherently trustworthy and reliable. *Ibid.*

The law of evidence recognizes that a statement in which a party confesses to having committed a crime subjects the declarant to criminal liability, and therefore constitutes a statement that is against interest. *See N.J.R.E.* 803(c)(25); *Evid. R.* 63(10); *Fed.R.Evid.* 804(b)(3); *Model Code of Evidence* Rule 509(1); *Uniform Rules of Evidence* Rule 63(10). The extent to which statements or portions of statements that are not explicitly incriminating may fall within the statement-against-interest hear-

say exception, however, has long been debated. *See Williamson, supra,* 512 *U.S.* at 611–12, 114 *S.Ct.* at 2440–41, 129 *L.Ed.*2d at 490–91 (Kennedy, J., concurring); *compare* Jefferson, *supra,* 58 *Harv. L.Rev.* at 62–63 (arguing admissibility of statements against interest should be limited to those portions of a statement that go "to the proof of the fact which is against interest") *with McCormick on Evidence* § 256 (1954) (arguing neutral, but not self-serving, collateral statements should be admissible) *and* 5 *Wigmore on Evidence* § 1465 (Chadbourn rev.1974) (arguing "[a]ll parts of the speech or entry may be admitted which appear to have been made while the declarant was in the trustworthy condition of mind").

Viewed broadly, the issue in this case is whether a statement that is not directly or obviously self-incriminatory may satisfy the standard for the admissibility of a statement against interest. More specifically, the focus is on whether statements that only indirectly inculpate the declarant while at the same time exculpating an accused can be admissible as statements against interest.

The analysis of this issue must initially distinguish statements that *exculpate the declarant* from liability by shifting blame to another—such statements are inherently self-serving and presumptively unreliable. *See State v. Bowser,* 297 *N.J.Super.* 588, 597–98, 688 *A.*2d 1060 (App.Div.1997) (quoting *State v. Colon,* 246 *N.J.Super.* 608, 612–13, 588 *A.*2d 440 (App.Div.1991)); *but see State v. Lozada,* 257 *N.J.Super.* 260, 271–72, 608 *A.*2d 407 (App. Div.) (misapplying standard applicable to admissibility of statement exculpating an accused to assess admissibility of declarant's self-exculpatory statement), *certif. denied,* 130 *N.J.* 595, 617 *A.*2d 1218 (1992); *State v. Gomez,* 246 *N.J.Super.* 209, 222, 587 *A.*2d 272 (App.Div.1991) (same). Similarly, the statements at issue in this case must be distinguished from statements of the declarant that *inculpate the defendant*—such statements engender constitutional concerns of the defendant, *i.e.,* violations of the Confrontation Clause of the Sixth Amendment, and may not be admitted as hearsay. *See Lee v. Illinois,* 476 *U.S.* 530, 541, 106 *S.Ct.* 2056,

2062, 90 *L.Ed.*2d 514, 526 (1986); *Bruton v. United States,* 391 *U.S.* 123, 126, 88 *S.Ct.* 1620, 1622, 20 *L.Ed.*2d 476, 479 (1968); *State v. Maristany,* 133 *N.J.* 299, 310, 627 *A.*2d 1066 (1993); *State v. Laboy,* 270 *N.J.Super.* 296, 304–05, 637 *A.*2d 184 (App.Div.1994); *cf. Tennessee v. Street,* 471 *U.S.* 409, 414–15, 105 *S.Ct.* 2078, 2081– 82, 85 *L.Ed.*2d 425, 431–32 (1985) (admitting statement inculpating defendant for limited purpose of rebutting defendant's testimony); *State v. Sego,* 266 *N.J.Super.* 406, 413–14, 629 *A.*2d 1362 (App.Div. 1993) (admitting statement inculpating defendant as prior incon- sistent statement to impeach declarant's subsequent statement exculpating defendant); *N.J.R.E.* 806 (authorizing the same).

The statements here neither exculpate the declarant nor incul- pate the defendant. Rather, the statements exculpate the defen- dant, and the question is whether those statements are sufficiently related to other statements that incriminate the declarant so that the defendant-exculpatory statements may also be viewed as self- inculpatory statements of the declarant, thereby rendering them reliable.

In the Appellate Division's view, the question of whether the defendant-exculpatory portions of Smith's declaration were sufficiently reliable to allow their admission was a discretionary determination to be made by the trial court. The Appellate Division was correct in noting that the reliability of statements against interest must be determined by the trial court as the condition for their admissibility. The flaw in the Appellate Divi- sion's approach, however, was that it emphasized extrinsic circum- stances bearing on the general reliability or trustworthiness of the declarant's statement as the condition for its admissibility. Rath- er, it is a statement's self-incriminating character which renders a declaration against interest.

We considered the standard for the admissibility of a defendant- exculpatory statement in *State v. Abrams,* 140 *N.J.Super.* 232, 356 *A.*2d 26 (App.Div.1976), *aff'd o.b.,* 72 *N.J.* 342, 370 *A.*2d 852 (1977). Barry Abrams and co-defendant Chenille Smith were accused of possession and distribution of a controlled substance. A police

detective alleged that he had purchased cocaine from Smith, whom he had seen purchase the same from Abrams. *Id.* at 235, 356 *A.*2d 26. Chenille Smith made the following statement shortly after her arrest:

I, Chenille Smith, sold Ernest [the detective] a bag of cocaine, but I didn't and never got nothing from Barry [Abrams].

[*Ibid.*]

As here, the trial court admitted the self-inculpatory portion of the statement as a declaration against penal interest, but redacted the portion of the statement that expressly absolved the defendant from criminal liability. The Appellate Division reversed, and explained:

The portion of [the] declaration which is exculpatory of Abrams suggests that [the declarant] was not merely his agent or partner in the drug sale; it intensifies [the declarant's] personal criminal responsibility for the transaction.

... The appropriate test for admissibility is whether, in the context of the whole statement, the particular remark was plausibly against the declarant's penal interest, even though it might be neutral or even self-serving if considered alone.

[*Id.* at 235–36, 356 *A.*2d 26.]

We affirmed on the basis of the appellate court's reasoning. *Abrams, supra,* 72 *N.J.* at 342, 370 *A.*2d 852.

In *State v. Gaines,* 147 *N.J.Super.* 84, 370 *A.*2d 856 (App.Div. 1975), *aff'd o.b. sub nom., State v. Powers,* 72 *N.J.* 346, 370 *A.*2d 854 (1977), we considered the admissibility of a statement exculpating a defendant that accompanied a less direct admission of guilt by the declarant. Powers and co-defendants Gaines and Phillips were stopped on the New Jersey Turnpike by a state trooper. *Gaines, supra,* 147 *N.J.Super.* at 87, 370 *A.*2d 856. The officer found guns on the rear floor of defendants' car and arrested them for unlawful possession of firearms. *Id.* at 89, 370 *A.*2d 856. Contemporaneous to the arrest, Phillips stated that Powers was unaware of the guns. *Ibid.* Phillips also stated, when asked if there was anything else in the vehicle, that there was another gun in the car. *Ibid.* The Appellate Division held that the police officer's testimony as to Phillips's remarks was admissible because both statements were against interest. *Id.* at 98, 370 *A.*2d 856. "The probative value in exonerating Powers

may be questioned," the court noted, "but the incriminatory significance as to Phillips is very clear." *Ibid.* As in *Abrams,* this Court affirmed the opinion below. *Powers, supra,* 72 *N.J.* at 346, 370 *A.*2d 854.

More recently, in *State v. Norman,* 151 *N.J.* 5, 697 *A.*2d 511 (1997), the Court found a defendant's statement to his brother that he, not the co-defendant, shot the victim to be admissible under hearsay exception *N.J.R.E.* 803(c)(25). We reiterated: "Statements by a declarant that exculpate another inferentially indicate[ ] his own involvement and are considered sufficiently against declarant's penal interests to be admissible." *Id.* at 31, 697 *A.*2d 511 (citation omitted). The Court relied on *State v. Davis,* 50 *N.J.* 16, 231 *A.*2d 793 (1967), *cert. denied,* 389 *U.S.* 1054, 88 *S.Ct.* 805, 19 *L.Ed.*2d 852 (1968), which upheld the admissibility of a statement by the defendant, given shortly after being arrested for murder, that a suspected accomplice "didn't have anything to do with it," *id.* at 18–19, 231 *A.*2d 793, on the ground that the declaration exculpating the suspected accomplice "inferentially indicated [defendant's] own involvement," *id.* at 29, 231 *A.*2d 793.

In *Norman,* we noted our continued approval of *Abrams.* 151 *N.J.* at 31, 697 *A.*2d 511. Other precedent accords. *See State v. Jamison,* 64 *N.J.* 363, 374, 316 *A.*2d 439 (1974) (holding perpetrator's statement that he was guilty of crime and accompanying statement that defendant was innocent were "clearly admissible" as declarations against penal interest); *State v. Bell,* 249 *N.J.Super.* 506, 512, 592 *A.*2d 657 (Law Div.1991) (admitting co-defendant's statement that he robbed victim of headphones and gave headphones to defendant, as well as statement that defendant was standing half a block away during the incident, as statements against penal interest); *State v. Barry, supra,* 171 *N.J.Super.* 543, 548–49, 410 *A.*2d 259 (App.Div.1979) (holding accomplices' statements that they drove robbery getaway car, along with statement that no one else was present, admissible as statements against penal interest), *rev'd,* 86 *N.J.* 80, 429 *A.*2d 581 (noting statements admissible as against interest but reinstating conviction based on

finding of harmless error), *cert. denied,* 454 *U.S.* 1017, 102 *S.Ct.* 553, 70 *L.Ed.*2d 415 (1981); *see also State v. Sejuelas,* 94 *N.J.Super.* 576, 582, 229 *A.*2d 659 (App.Div.1967) (admitting statement by witness that several days prior to arrest defendant's companion told others he was going to frame defendant as statement against penal interest).

We note further that the number of participants in a crime has no bearing upon the admissibility of a defendant-exculpatory statement. Our affirmance of *Abrams* effectively overruled *State v. Sease,* 138 *N.J.Super.* 80, 84, 350 *A.*2d 262 (App.Div.1975), which held that, in a crime known to have been committed by more than one person, a declarant's admission of guilt was not probative of another's innocence. *Abrams* took the position that "nothing could be more relevant to the issue of the defendant's guilt than competent statements that she did not participate." *Abrams, supra,* 140 *N.J.Super.* at 236, 356 *A.*2d 26. Indeed, defendant-exculpatory statements such as those at issue in this case are not only relevant, they bear the indicia of reliability necessary to be admitted as statements against the declarant's penal interest.

Although the language of *N.J.R.E.* 803(c)(25) does not expressly address the admissibility of statements exculpating a defendant from criminal liability, *accord Fed.R.Evid.* 804(b)(3), the legislative history of *N.J.R.E.* 803(c)(25) and *Evid. R.* 63(10) help to guide us to the conclusion that such statements are admissible. *Accord Williamson, supra,* 512 *U.S.* at 614, 114 *S.Ct.* at 2442, 129 *L.Ed.*2d at 492 (Kennedy, J., concurring) (interpreting *Fed.R.Evid.* 804(b)(3) by looking to "the Advisory Committee's Note, the common law of the hearsay exception for statements against interest, and the general presumption that Congress does not enact statutes that have almost no effect"). The *Report of the New Jersey Supreme Court Committee on Evidence* (Mar.1963) ("*1963 Report*"), which "was the foundation for the 1967 rules," *see Report of the New Jersey Supreme Court Committee on the Rules of Evidence* (1991), *reprinted in* 129 *N.J.L.J.* 1 (Oct. 10, 1991) ("*1991 Report*"), explicitly provides that out-of-court state-

ments exculpating an accused are to be admitted as statements against interest. The Committee wrote, regarding *Evid. R.* 63(10):

> *[A] statement against penal interest should be admissible if it exculpates a defendant on trial and for the same policy reason which prevents it from being used against him, namely, to protect an innocent person.* While it is true that a guilty defendant might suborn such a statement, nevertheless criminal defendants as a class should be able to use such statements on the basis that an innocent man would otherwise be denied the necessary evidence of a statement which clears him of the crime.
>
> [*1963 Report, supra,* at 171 (emphasis added).] [3]

Thus, the history of our current evidence law, including that of *N.J.R.E.* 803(c)(25) and its predecessor, *Evid. R.* 63(10), strongly supports the rule.

 In sum, we hold that a declarant's statements exculpating a defendant should be admitted as evidence under the statement-against-interest exception to the hearsay rule if, when considered in the light of surrounding circumstances, they subject the declarant to criminal liability or if, as a related part of a self-inculpatory statement, they strengthen or bolster the incriminatory effect of the declarant's exposure to criminal liability. The circumstances that indicate that a defendant-exculpatory statement may enhance a declarant's self-inculpatory statement will necessarily vary. In this case, we recognize that although a statement by a declarant that another suspected of an offense is innocent may not on its face inculpate the declarant, the statement takes on inculpatory character and subjects the declarant to criminal liability when the declarant is a suspect in connection with the same crime. *See Norman, supra,* 151 *N.J.* at 31, 697 *A.*2d 511; *Davis, supra,* 50 *N.J.* at 29, 231 *A.*2d 793. This is particularly true if the declarant has admitted his involvement in the crime either directly, *see Abrams, supra,* 72 *N.J.* at 342, 370

---

[3] Further, when addressing the new *N.J.R.E.* 803(c)(25), the 1991 Committee explicitly "reject[ed] the second sentence of the federal analogue which require[d] corroborating circumstances indicating trustworthiness as a condition for the admission of declarations against penal interest by another person exculpating an accused." *1991 Report, supra,* 129 *N.J.L.J.* at 40.

A.2d 852, *aff'g o.b.* 140 *N.J.Super.* at 235–36, 356 A.2d 26, or indirectly, *see Powers, supra,* 72 *N.J.* at 346, 370 A.2d 854, *aff'g o.b. sub nom.* *Gaines, supra,* 147 *N.J.Super.* at 98, 370 A.2d 856.

## B.

■ Under this standard, the exculpatory portions of Smith's confession should have been admitted into evidence. The crux of the admitted portion of Smith's statement was that on September 24, 1994, Smith, an associate named McMillan, and "some young boys" encountered Morris sleeping on a porch and robbed him. Smith claimed that he did not directly participate in the robbery, but "stood on the corner as the lookout." After the robbery, Smith claims, he and McMillan bragged to Randolph White, Frank Williams, and "some others" about what they had done. The admitted portion of Smith's account thus directly implicates his involvement in the crime for which White was convicted. It also indirectly exculpates White; if Smith was bragging to White about the robbery, one may infer that White did not participate in the crime.

We must then consider whether the redacted portion of Smith's statement had the potential to subject Smith to criminal liability or to strengthen or support Smith's liability for the offense. Because Smith subjected himself to criminal liability by confessing his involvement in the crime, we consider only whether the redacted portion of Smith's statement had the potential to strengthen or support Smith's self-inculpatory statement.

In this regard, the exculpatory portion of Smith's statement falls squarely within the bounds of admissibility under the statement-against-interest exception recognized in *Norman, Abrams* and *Powers.* In the context of Smith's admission that he participated in the Morris robbery and assault, Smith's attendant statement that White was not involved in the crime strengthens the incriminatory effect of his confession. Therefore, contrary to the trial court's otherwise reasonable assessment, the portions of the statement exculpating White are not extricable or marginal. Accord-

ingly, it was error not to admit the portions of Smith's statement that exculpated White in the present case.

We emphasize that many issues regarding the trustworthiness and veracity of Smith's exculpation of White remain. The Appellate Division suggested that Smith's defendant-exculpatory statements lacked the trustworthiness necessary to be admitted into evidence. *See supra* at 240, 729– *A.*2d at 36 – 37. In so doing, the court focused essentially on extrinsic circumstances of reliability. As earlier noted, although those circumstances have no bearing on admissibility, they nevertheless occupy an important place in the trial presentation of relevant evidence. Once the declarant's out-of-court incriminating statement is admitted into evidence, the jury must determine the statement's probative worth. The jury should undertake an unfettered and full consideration of all the circumstances surrounding the declarant's confession and disregard the statement or any part thereof if it finds the statement not credible. *Cf. N.J.R.E.* 104(c) (requiring that although question of admissibility of confession is solely for determination of court, whenever defendant's statements, admissions and confessions are introduced into evidence, jury must be instructed to determine credibility of and weight to be accorded to statements without regard to court's determination of admissibility); *State v. Jordan,* 147 *N.J.* 409, 425, 688 *A.*2d 97 (1997) (same); *State v. Hampton,* 61 *N.J.* 250, 272, 294 *A.*2d 23 (1972) (same). Smith's statement itself contained information that had a direct bearing on issues of credibility and veracity.[4] In addition, other extrinsic circum-

---

[4] The redacted portions of Smith's statement that exculpated defendant included:

Q. Why is it that you are giving this statement?
A. I'm giving this statement because Randolph shouldn't get in trouble for something he did not do.
Q. How is it that you know Randolph and how long have you known him?
A. I've known him from the streets for a long time.
Q. Is there anything else that you would like to add to this statement?
A. No.

stances bear relevantly on the trustworthiness, reliability and veracity of the statement. The fact that Smith's explanation ratifies White's alibi is one such matter for consideration, as is the fact that Smith's statement was made as he was serving a ten-year term for a prior aggravated assault. The jury may also consider the probative worth of Smith's exculpatory statement in light of the fact that there were multiple perpetrators. Although these circumstances may not bear · directly on the admissibility of White's declaration, they factor prominently into the weight it should be given.

## III

■ The Appellate Division held that the admission of Smith's statement without the portion that exculpated defendant was harmless error. An error is harmless unless there is a reasonable doubt that the error contributed to the verdict. *State v. Macon*, 57 *N.J.* 325, 338, 273 *A.2d* 1 (1971). In *Barry, supra*, 86 *N.J.* at 92, 429 *A.2d* 581, the Court reversed the appellate decision and reinstated the defendant's conviction because we found that omission of the exculpatory matter was ultimately harmless. Similarly, in *Norman, supra*, 151 *N.J.* at 33, 697 *A.2d* 511, we found that an exculpatory declaration should have been admitted as a statement against interest, but did not disturb defendant's conviction because in light of all circumstances the omission amounted to harmless error. *But see id.* at 41, 697 *A.2d* 511 (Stein, J., dissenting) (agreeing that exculpatory statements should have been admitted, but dissenting in respect of the Court's finding of harmless error).

The Appellate Division in the present case found White was not prejudiced; in the court's view, the admitted portion of Smith's ·

---

Q. Did anyone force, threaten, coerce or intimidate you into giving this statement and are you doing so voluntarily and of your own free will? A. No one forced or threatened me and I am doing this of my own free will. Also, Randolph has kids and it's a shame that he can't be with them because of this.

statement had the same potential to exculpate defendant as the redacted portion. We cannot conclude that had the jury considered those parts of the statement exculpating White together with those placing the blame on Smith and others that could not have entertained a reasonable doubt about defendant's participation in the crime. This was a credibility contest. The evidence identifying White as a participant in the crime was fluctuant. Given the circumstantial and tenuous nature of the evidence in this case, we cannot be certain that statements explicitly exonerating White would not have been viewed differently by the jury than statements that merely allowed an inference that defendant was not involved. Where we cannot be certain that introduction of defendant-exculpatory material would not have altered the outcome, we "should not speculate." *Id.* at 41, 697 *A*.2d 511 (Stein, J., dissenting). Therefore, we hold that redaction of the defendant-exculpatory material in this case was not harmless error.

## IV

In view of our conclusion that the trial court's failure to admit the portions of Smith's statement exculpating the defendant constituted reversible error, we do not consider whether admission of the evidence would have been required by the Compulsory Process Clause of the Sixth Amendment. *See Chambers v. Mississippi,* 410 *U.S.* 284, 302, 93 *S.Ct.* 1038, 1049, 35 *L.Ed.*2d 297, 312–13 (1973); *Jamison, supra,* 64 *N.J.* at 378, 316 *A*.2d 439. Because we are reversing defendant's conviction, we need not consider the adequacy of the sentence heretofore imposed; in any event, we observe no abuse of discretion in that regard. *See State v. Roth,* 95 *N.J.* 334, 363–66, 471 *A*.2d 370 (1984).

We review defendant's remaining arguments briefly. Defendant challenges the sufficiency of the identification testimony. Although the identification testimony in this case was erratic, the identification procedures were not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 *U.S.* 377, 383, 88 *S.Ct.*

967, 971, 19 *L.Ed.*2d 1247, 1253 (1968); *State v. Farrow,* 61 *N.J.* 434, 451, 294 *A.*2d 873 (1972), *cert. denied,* 410 *U.S.* 937, 93 *S.Ct.* 1396, 35 *L.Ed.*2d 602 (1973).

■ Defendant's challenge to the jury instruction on identification is also unpersuasive. The court's jury charge on identification in the present case was based upon the Model Jury Charge for identification. *See Model Jury Charges–Criminal,* Identification (Nov. 26, 1990). The court added to that instruction, noting the discrepancy between Morris's identification pre-trial and at trial, and between identifications made by different witnesses, and that the jury should take all of that into consideration. Defendant did not object to the court's instructions at trial. The court's instructions were not clearly capable of producing an unjust result. *R.* 2:10–2.

V

For the reasons stated, we reverse the judgment of the Appellate Division and defendant's conviction, and remand for a new trial.

*For reversal*—Chief Justice PORITZ and Justices POLLOCK, HANDLER, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.