# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4572-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.D.K.,

    Defendant-Appellant.

_____

> Submitted November 2, 2020 – Decided  December 29, 2020
>
> Before Judges Messano and Suter.
>
> On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 11-01-0025.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Angela Maione Costigan, Designated Counsel, on the brief).
>
> James L. Pfeiffer, Warren County Prosecutor, attorney for respondent (Dit Mosco, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant M.D.K. of the second-degree sexual assault of A.C. (Ann), a child under thirteen years of age, N.J.S.A. 2C:14-2(b), and third-degree endangering the welfare of Ann, N.J.S.A. 2C:24-4(a).[1]  The evidence at trial revealed that in June 2010, defendant was living with his sister, J.C. (Julie), Ann's mother, and other family members.  State v. M.D.K., No. A-599-12 (App. Div. Oct. 23, 2014).  Ann, eight-years old at the time, told her mother that defendant made her sleep with him the night before, and that he touched her in a sexual manner.  Id. at 2.  When confronted by Julie, defendant admitted the child slept in his room the night before, but he denied any inappropriate contact.  Id. at 2–3.  According to Ann's testimony at trial, defendant said that he may have "accidentally grabbed [Ann] the wrong way when [he] carried her back to [her] bed, or maybe the cat . . . was in the bed . . . [and] was clawing at [Ann]."  Ann became frightened at defendant's appearance in the house the next day, and Julie took her to the police station.  Id. at 3.

A detective from the Warren County Prosecutor's Office conducted a videotaped interview of Ann that was played for the jury in which she described defendant's conduct in his bedroom.  In addition, Ann and her mother testified

---

[1]  We use initials and pseudonyms for defendant, the alleged child victim and other family members pursuant to Rule 1:38-3(c)(9).

before the jury, as did defendant, who admitted Ann slept in his room on the night in question, as she frequently did, but denied any inappropriate touching.

The jury convicted defendant of both counts of the indictment, and the judge sentenced him to an eight-year term of imprisonment with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. We affirmed defendant's conviction and sentence on direct appeal. M.K.D., slip op. at 13. The Supreme Court denied defendant's petition for certification. State v. M.D.K., 221 N.J. 286 (2015).

In a timely pro se PCR petition, defendant alleged there was new evidence not available at the time of trial, and that he "was not represented correctly." In a supplemental verified petition prepared after the appointment of PCR counsel, defendant specifically alleged the ineffective assistance of trial counsel (IAC). In his brief, PCR counsel asserted that trial counsel's investigator interviewed four individuals who provided potentially exculpatory evidence, but, for reasons unexplained by the record, trial counsel chose not to call any of them as witnesses. The investigative reports furnished with the brief revealed the following.

In February 2012, immediately before trial, the investigator spoke with defendant's mother, C.E. (Cathy), who owned the home where the alleged

incident occurred and lived there with Ann, Julie, Julie's other children, and defendant. Cathy said that after the allegations were made, she saw Ann crying in her room. When Cathy approached the child, Ann told her what "she had said happened was a dream but that her mother and [her mother's boyfriend] told her it was real." Ann wanted to talk to defendant, who had moved out of the house at that point. According to Cathy, Julie came into the room, screamed, cursed, and forbid Cathy to speak with Ann or any of her other children. Cathy did not speak with Ann again. Additionally, Cathy told the investigator that Ann's father was abusive to Ann and her siblings.

The investigator also spoke to K.E. (Kerry), defendant's sister. She was the first person Julie spoke with following Ann's disclosure "that she had a 'dream' that [defendant] had touched her inappropriately." According to Kerry, the family seemingly agreed that Ann should "speak with a therapist to verify, if possible, where those allegations spr[a]ng from." Kerry also said that Ann's father was abusive toward the child. Although defendant continued to live in the same home with Ann, Julie, and Cathy for a while after the investigation, eventually he moved in with Kerry and her children and never caused any problems.

The defense investigator also spoke with two other people who knew defendant for many years and essentially vouched for his good character. PCR counsel contended trial counsel provided ineffective assistance because he failed to produce any of these four individuals as witnesses at trial.

Additionally, defendant offered a letter and certification from his uncle, C.K. (Carl), both dated post-trial. The trial occurred in February and March 2012; Carl claimed that sometime in 2013, he asked Julie what happened between defendant and Ann. Carl stated Julie told him that defendant owed her money for "pot[,]" and, when he failed to pay, "she called the cops with the story that he touched her daughter in inappropriate ways[.]" Carl said he called Cathy and informed her of the conversation.

The record fails to explain why in August 2018, different PCR counsel filed a supplemental brief in reply to the State's brief. The reply brief rebutted the State's contention that defendant's PCR petition was procedurally barred and failed to establish grounds for a new trial based on newly discovered evidence. Successor PCR counsel filed a second supplemental brief in September 2018 which addressed whether the statements Julie allegedly made to Carl were

exceptions to the hearsay rule and admissible as statements against interest pursuant to N.J.R.E. 803(c)(25).[2]

The first PCR hearing took place on October 23, 2018. In preliminary remarks, the judge, who was not the trial judge, framed the issue as a motion for a new trial based on newly discovered evidence. In discussing the need for an evidentiary hearing, the judge asked if PCR counsel anticipated calling trial counsel in addition to Carl as a witness because it was not clear if trial counsel "knew" of Carl's allegations.[3] In response, PCR counsel replied, "No, we're not alleging ineffective assistance, if that's what [y]our [h]onor's question [was]." At a later point in the hearing, when the prosecutor demanded discovery from defendant's trial file because attorney-client privilege was "waived on a PCR," the judge said, "But that's ineffective assistan[ce of] counsel . . . not one of

---

[2] N.J.R.E. 803(c)(25) excepts from the hearsay rule

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary, proprietary, or social interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid declarant's claim against another, that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true.

[3] Given Carl's claim that Julie did not make the statements until after trial, we fail to see why the judge was concerned about whether trial counsel was aware of this information while cross-examining Julie.

A-4572-18T4

[defendant's] grounds for appeal, at the moment." Successor PCR counsel said nothing in response.

However, in a January 31, 2019 letter to the judge, PCR counsel responded to "the State['s] submitted [o]rder of January 15, 2019[.]" That letter clearly states that defendant was not waiving his IAC claims, but only such claims related to "pretrial matters[.]" He reminded the court of the investigative reports that were furnished with defendant's brief, and further noted that the State had specifically addressed defendant's IAC claims in its brief.

In a written response to PCR counsel, the judge stated, "The [h]earing will not be expanded as requested by appellant. The issue is to determine the credibility . . . of the third[-]party's statement that [Julie] admitted that she lied at trial. Pending the outcome of that [h]earing, other issues may become relevant."

The judge held an evidentiary hearing on February 21, 2019, at which Carl and defendant testified.[4] The judge framed the issue as follows:

> We're here today because of a hearsay document received by defense counsel concerning . . . [Julie], . . . sister of [defendant]. Concerning the conversation, which [Carl] had with [Julie]. . . .

---

[4] The judge said the hearing was being held pursuant to a prior order he entered. We assume this is the January 15, 2019 order.

> Now, defense counsel claims that that is a statement against interest . . . . The [c]ourt knows that although [it] maybe a statement against interest, it's a hearsay document. And unless some reliability is attached to that document, it's not going to be admissible.

Carl testified and was somewhat unsure about when he had the conversation with Julie. At one point, Carl said he told Cathy about the conversation three-to-six months after trial and believed she would let defendant's trial counsel know. Carl also identified a March 6, 2012 Facebook message to Julie asking her, "What happened? Details please."[5]

Defendant also testified. He said that sometime after trial, his mother told him of Carl's conversation with Julie. Defendant denied owing Julie any money for marijuana. He implied Julie falsely accused him because he wanted her to stop selling marijuana from his mother's house because by doing so, Julie was "going to lose [her] kids."

The judge immediately rendered an oral decision at the conclusion of the testimony and without argument by the attorneys. After summarizing the contents of the two documents authored by Carl, the judge said:

> Most people, if they had received this information, would have done something with it. I mean . . . obviously, it's critical. If true, it's critical. It

---

[5] The jury returned its guilty verdicts on March 6, 2012.

> reflects an opportunity for defense counsel to question about motive of the statement. . . . [D]id [defendant] owe you money[?] And that never happened in this case, but I don't know why. I gather it's because the trial attorney didn't know this. And the prosecutor didn't know it. . . . It just appears . . . after the fact.

As already noted, Carl's written statements said Julie did not make these statements to him until after defendant's trial. Although at times confused, Carl's testimony can be found to generally corroborate this time frame.

The judge continued:

> The [c]ourt was looking for some connection which can verify [Carl's] statement. Not verify it, but make [it] seem relevant. For example, "Yeah, I did owe her $700. But I never told my attorney that. I never told anybody that." But . . . [d]efendant here in [c]ourt had testified under oath, that, "No, I didn't owe her any money." So the statement itself lacks credibility.

Of course, whether defendant actually owed his sister $700 for marijuana was beside the point. The critical issue was whether Julie told Carl that she falsely accused defendant because he owed her money.

The judge completed his ruling by saying:

> I've had several cases similar to this when hearsay documents which appear to have a great deal of meaning become basically non-evidential because they're hearsay documents. And they simply are not trustworthy. There's nothing that you can verify, as good as this statement sounds, there's nothing to do to

A-4572-18T4

verify it. In fact, <u>it's contradictive by the very person,</u> <u>[defendant], who has filed a [PCR] petition</u> . . . .

The [c]ourt created an evidentiary hearing to give an opportunity to make this document relevant as "newly discovered evidence." It's difficult to tell when it was discovered. I don't think that's the major issue. <u>It's whether or not the document itself can be given any</u> <u>credibility</u>. I find that it cannot.

[(Emphasis added).]

Again, whether defendant owed his sister money for marijuana was irrelevant to the issue at hand. Moreover, the entire point of holding an evidentiary hearing was not to decide the credibility of Carl's letter and certification; the judge had to determine whether Carl's testimony about Julie's statements was worthy of belief. He never did.

The judge denied defendant's PCR petition and entered an order that contained the following rationale: "[Carl's] statement regarding an alleged statement made by the victim's mother, would not have been admissible because it lacked any indicia of reliability."

I.

On appeal, defendant notes the PCR judge failed to "address or acknowledge" his asserted IAC claims, and he was entitled to an evidentiary hearing on those. The State argues the "issue was not in the original [PCR]

10

petition . . . and was subsequently essentially waived by defense counsel." It cites PCR counsel's statement during the October 23, 2018 hearing that we quoted above. The State also argues that defendant failed to demonstrate a prima facie case of IAC premised on the statements made to the investigator by the four witnesses we noted above and trial counsel's failure to call any of those individuals as witnesses.

We reject the State's disingenuous argument that defendant did not make an IAC claim in his original petition. Although it may have been inartful, defendant stated in his pro se PCR petition the he "was not represented correctly" at trial. The supplemental verified petition filed with the assistance of appointed counsel specifically made an IAC claim.

The correspondence between PCR counsel and the court which we have cited at length makes it clear that the State responded to the merits of the IAC arguments. Moreover, after this appeal was filed, the assistant prosecutor representing the State on appeal wrote to the judge. It does not appear from the letter that defense counsel was served with the correspondence. The prosecutor noted the judge had not addressed defendant's IAC claims, "other than a statement . . . in the 23 October 2018 hearing to the effect IAC was not one of the grounds for appeal[.]" She inquired whether the judge intended to file a

11

supplemental statement of reasons pursuant to Rule 2:5-1(b). The judge's written reply stated that PCR counsel "chose not to advance [defendant's IAC] claims[,]" and, therefore, the judge only addressed the "newly discovered evidence issue." The judge cited an April 16, 2018 letter from PCR counsel which the judge said he "clarified" at the October 23, 2018 hearing.

The April 16, 2018 letter is in the record. Primarily, it dealt with a dispute PCR counsel was having with the State over its request for "transcripts of pretrial hearings." Counsel said he "accept[ed the prosecutor's] previous proposal that [she] would not require transcripts[] of the hearings if the defense waived pretrial claims." PCR counsel ended the letter by noting defendant agrees to this waiver to "avoid[] further delay in the adjudication of his PCR claim based on newly discovered evidence."

We will not address defendant's IAC claim on a blank slate, as the State urges us to do as an alternative argument. Defendant produced reports summarizing interviews conducted before trial with four witnesses. We reject the State's arguments that the statements allegedly made by Ann and Julie to two of those witnesses would have been inadmissible at trial; clearly, at the least, trial counsel could have used them to impeach Ann and Julie when they testified.

Perhaps trial counsel made a strategic decision not to call any of the four witnesses, but that is not clear from the trial record.

We therefore remand the matter to the Law Division to conduct further proceedings on defendant's IAC claim solely as it relates to those four investigative reports and trial counsel's decision not to question Ann and Julie about the specific statements referenced in the reports, or call any of the four individuals referenced in the reports as witnesses. If PCR counsel intends to call trial counsel, the investigator or any of the four persons that are subjects of the reports as witnesses on remand, we order the court to conduct an evidentiary hearing on the IAC claim. If PCR counsel intends to rely solely on the reports, we leave the conduct and scope of the proceedings to the PCR judge's sound discretion.

## II.

Defendant argues that Julie's admission to Carl that she falsely accused defendant was newly discovered evidence that met the three-prong standard for a new trial under State v. Ways, 180 N.J. 171 (2004). There, the Court said:

> To meet the standard for a new trial based on newly discovered evidence, defendant must show that the evidence is 1) material, and not "merely" cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was "not discoverable by reasonable diligence beforehand"; and

3) that the evidence "would probably change the jury's verdict if a new trial were granted."

[Id. at 187 (quoting State v. Carter, 85 N.J. 300, 314 (1981)).]

"[A]ll three prongs of that test must be satisfied before a defendant will gain the relief of a new trial." Ibid. (citing Carter, 85 N.J. at 314).

We agree with defendant that the judge never conducted the requisite analysis. Instead, the judge focused his attention on the admissibility of Carl's two written statements and concluded the documents lacked "credibility."

We assume this meant that the judge found the documents and their contents lacked "reliability[,]" a term he used at an earlier hearing, because defendant failed to corroborate that he owed Julie money for marijuana he allegedly purchased. However, the hearsay exception for statements against interest does not require nor necessarily permit such inquiry. "'[E]xtrinsic circumstances bearing on the general reliability or trustworthiness of the declarant's statement' do not pertain to the admissibility of the statement, which instead must be determined on 'a statement's self-incriminating character' alone." State v. Williams, 169 N.J. 349, 359 (2001) (alteration in original) (quoting State v. White, 158 N.J. 230, 240 (1999)). Clearly, if Julie told Carl

14

she falsely accused defendant of sexual assault and, thereby, perjured herself at trial, that statement would be excepted from the hearsay rule.

The statements Julie allegedly made to Carl clearly satisfy the second prong of Ways' standard. However, we disagree with defendant's assertion in his brief that the judge found Carl to be a credible witness. Simply put, the judge inexplicably focused his attention on the "hearsay document[s]" and never found, as a fact, that Julie made the alleged statements to Carl. Without that essential finding, i.e., that Julie made a statement against interest, we cannot decide whether the newly discovered evidence — Julie's false accusation — satisfies the other prongs of Ways' test.

We will not make the factual determination ourselves. See State v. Elders, 192 N.J. 224, 244 (2007) ("An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" (quoting State v. Johnson, 42 N.J. 146, 161 (1964))). We therefore remand the matter to the PCR court to determine whether Julie told Carl that she falsely accused defendant of the sexual assault of Ann. If the judge finds such statements were made, he must then consider whether

they satisfy the first and third prongs of the <u>Ways</u> standard. Those two standards are interrelated. As the Court explained:

> The characterization of evidence as "merely cumulative, or impeaching, or contradictory" is a judgment that such evidence is not of great significance and would probably not alter the outcome of a verdict. However, evidence that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory.
>
> [<u>Id.</u> at 189 (citing <u>State v. Henries</u>, 306 N.J. Super. 512, 535 (App. Div. 1997)).]

We recognize that the PCR judge was retired and serving on recall. If the remand hearing is conducted by a different judge, we leave the conduct of the hearing to her or his sound discretion, including whether Carl must, if able, be produced again as a witness. We also leave to the remand judge's sound discretion whether to permit the State or defendant to produce additional witnesses.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION