# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0587-24
              A-0588-24

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

K.A. and J.M.,

      Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF R.A-M.,
a minor.

_____

Submitted October 1, 2025 – Decided October 21, 2025

Before Judges Mayer and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FG-12-0049-23.

Jennifer N. Sellitti, Public Defender, attorney for appellant K.A. in A-0587-24 (Amy M. Williams, Designated Counsel, on the briefs).

Jennifer N. Sellitti, Public Defender, attorney for appellant J.M. in A-0588-24 (Bruce P. Lee, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor R.A-M. (Meredith A. Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In these consolidated appeals, defendants K.A. (mother) and J.M. (father) appeal from an October 8, 2024 judgment of guardianship terminating their parental rights to their daughter, R.A-M. (child or daughter), born in 2022. We affirm for the thorough and cogent reasons stated on the record on October 8, 2024 by Judge Barbara Clarke Stolte after a seven-day trial.

The facts and evidence adduced at trial were set forth in detail in Judge Stolte's oral decision. We summarize the facts.

Historically, mother and father suffer from substance abuse and various psychological conditions affecting their mental health. The New Jersey

Division of Child Protection and Permanency (Division) conducted an emergency removal of the child in January 2022 based on mother's self-reporting of her history of psychiatric issues and use of synthetic marijuana laced with opium to the hospital where she gave birth. The hospital tested mother and child for illicit substances and the results were negative.

The Division implemented a safety plan for mother and child. Under the Division's safety plan, maternal grandmother agreed to supervise her daughter and grandchild. Further, mother agreed to be evaluated for her self-reported substance abuse issues.

Shortly after implementation of the safety plan, maternal grandmother told the Division she was unable to adequately supervise mother. The Division removed the child and placed her in a non-relative resource home. Mother regularly visited the child after that removal.

Around the same time, father told the Division he had ongoing mental health issues, a history of substance abuse, and was a registered sex offender. The Division offered father services to address his issues. However, father either declined the services or was discharged for non-compliance from those programs in which he enrolled.

A-0587-24

In April 2022, after mother no longer lived with maternal grandmother, the Division placed the child with maternal grandmother. Maternal grandmother developed a strong parental relationship with the child.

Mother frequently visited her daughter when the child resided with maternal grandmother. Mother also attempted to address her ongoing mental health and substance abuse issues in mid-2022. The services providers reported mother had complied with their program requirements.

Around July 2022, the Division lost contact with father. During the same month, mother tested positive for marijuana. The Division again referred mother for substance abuse and mental health treatment. Mother continued to test positive for marijuana through October 2022.

The Division eventually made contact with father in November 2022. Although father expressed an interest in being involved with his child, he took no steps to do so.

Mother maintained regular visits with the child during this period. However, she made little progress in the treatment programs offered through the Division and stopped attending a particular treatment program in November 2022. The treatment program discharged her for noncompliance in December 2022.

4

After a January 2023 case management conference, mother agreed to attend various treatment programs so she could be reunified with her child. Mother and father lived together in early 2023 but struggled financially. Although both parents agreed to updated substance abuse evaluations, father never attended any of the scheduled evaluations.

In March 2023, mother self-reported using fentanyl. The substance abuse treatment program in which mother was enrolled at that time reported she displayed strange behaviors and discharged her from the program. The substance abuse program suggested mother focus on her mental health issues rather than her substance abuse issues. Maternal grandmother would not supervise mother's visits with the child due to mother's erratic behaviors.

Despite the Division's substantial efforts toward reunification, mother and father demonstrated a recurring pattern of nonparticipation or noncompliance in mental health and substance abuse treatment programs. Throughout the litigation, mother and father failed to demonstrate sufficient self-improvement to achieve permanent reunification with the child.

As a result, in May 2023, the court approved the Division's plan to terminate parental rights rather than pursue a plan for reunification. At that time, mother was hospitalized for ingesting psychedelic mushrooms.

 A-0587-24

Additionally, father declined to participate with the evaluations arranged by the Division and refused services offered by the Division.

Although mother maintained regular visits with the child during the litigation, father's visits were rare. According to the record, father had last seen the child in July 2023.

On behalf of the Division, Gregory Gambone, Ph.D., an expert in the field of clinical psychology, conducted several evaluations of mother. The doctor recommended mother comply with the Division's recommended psychiatric and substance abuse treatment program. In his bonding evaluation of mother and child, Dr. Gambone reported:

> In the current assessment, the combination of a weak and inconsistent emotional attachment along with a lack of social, emotional, and cognitive dependence suggests that terminating the relationship between [the child] and her biological mother, [mother] may not cause short-term psychological dysfunction resulting in permanent emotional, cognitive, or social impairments. However, possible long-term consequences of a complete break with her biological mother may have a significant psychological impact on [the child]'s self-esteem, confidence, and independence in the future.

In an updated evaluation of mother in April 2024, Dr. Gambone found mother's bond with her child "ambivalent." He concluded mother provided an "inconsistent state of emotional security" for the child. Based on his findings,

A-0587-24

Dr. Gambone recommended the child be placed in a more stable and nurturing environment.

In his bonding evaluation of maternal grandmother and the child, Dr. Gambone found maternal grandmother to be "the optimal permanent custodian" for the child. He explained maternal grandmother had a strong, positive emotional attachment to the child. He further concluded maternal grandmother would provide a "consistent state of emotional security" for the child. Based on his evaluation, Dr. Gambone recommended the child be adopted by maternal grandmother.

At trial, Judge Stolte heard testimony from Division caseworkers who described their interactions with mother and father throughout the legal proceeding. The Division's caseworkers also testified regarding the various services the Division offered mother and father and their inability to engage in or complete many of the offered programs.

Judge Stolte also heard testimony from the Division's expert witness, Dr. Gambone, who reported his findings and recommendations based on his evaluations. Dr. Gambone's testimony was consistent with his report to the extent he found maternal grandmother to be the "optimal permanent custodian." He further explained separation of the child from maternal grandmother might

A-0587-24

cause the child to suffer significant psychological and cognitive dysfunction. According to Dr. Gambone, mother had a weak and inconsistent emotional attachment to the child and lacked any social, emotional, and cognitive understanding of the child's needs. Despite his inability to evaluate father, Dr. Gambone noted father had no attachment to the child and had almost no contact with her. Based on his findings, Dr. Gambone concluded that termination of parental rights would not do more harm than good.

Before the start of the trial, the Division discussed adoption versus Kinship Legal Guardian (KLG) with maternal grandmother. At trial, maternal grandmother unequivocally testified she wanted to adopt the child. Maternal grandmother explained KLG would permit mother and father to attempt to regain custody. Maternal grandmother expressed her belief that such a situation would not be in the child's best interests. However, maternal grandmother told Judge Stolte that she intended to maintain contact between mother and child, including allowing mother to visit with the child.

A-0587-24

Father did not attend the trial because he feared he would be arrested. Mother appeared on some of the trial days but did not testify.[1] Neither parent presented any expert testimony.

After hearing the unrefuted testimony and reviewing the documents admitted into evidence, Judge Stolte, applying the best interests of the child test under N.J.S.A. 30:4C-15.1(a), determined the Division clearly and convincingly met its burden of proof supporting termination of parental rights.

The judge found each of the testifying witnesses credible. She concluded the parents' mental health and substance abuse issues, coupled with their nonparticipation or noncompliance with treatment programs, resulted in harm to the child. Based on the parents' failure to address their issues, the judge found mother and father endangered the child's safety, health, and welfare. She further determined mother and father were unable or unwilling to eliminate the harm to the child attributable to their untreated mental health and substance abuse issues.

Additionally, Judge Stolte concluded the Division made reasonable efforts to refer mother and father to the appropriate treatment programs and services and arranged for visits with the child. When mother and father agreed to

---

[1] Mother was admitted to an inpatient mental health program during the trial. As a result, mother's appearance at trial on June 11 and 13 was waived.

participate in the Division's programs and services, the judge noted mother and father were unsuccessful in completing the offered programs and services.

Regarding alternatives to termination of parental rights, Judge Stolte found the Division fully informed maternal grandmother of the options regarding the child, including KLG. The judge found maternal grandmother understood the difference between adoption and KLG, and maternal grandmother expressed a desire to provide a stable life for the child through adoption.

Judge Stolte, relying on Dr. Gambone's testimony, found termination of parental rights would not do more harm than good. As Dr. Gambone explained, mother lacked an understanding of the child's physical, emotional, intellectual, and social needs. Because father did not participate in the scheduled evaluations with Dr. Gambone, Judge Stolte found there was no evidence that father could nurture and care for the child. Additionally, the judge explained any possible issues with termination of parental rights could be addressed if the child remained with maternal grandmother and received counseling.

On appeal, mother and father argue the judge erred in finding the Division satisfied all four prongs of the best interests of the child test. Additionally, father argues the judge improperly relied on his status as a sex offender in

10

terminating his parental rights.  Further, because he claims to be an unreliable historian, father asserts the judge should not have considered his self-reported drug use and mental health issues in terminating his parental rights.  Father also contends the judge's reliance on maternal grandmother's reasons in support of adoption rather than KLG were insufficient for rejecting KLG as an alternative to termination.  We reject these arguments.

Our scope of review from an order terminating parental rights is limited. N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007).  We accord substantial deference to a trial judge's opportunity to observe witnesses firsthand and evaluate their credibility.  N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014).  "Our general deference on appeal is also informed by the Family Part judge's 'feel of the case,'" N.J. Div. of Child Prot. & Permanency v. D.H., 469 N.J. Super. 107, 116 (App. Div. 2021) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)), and by the Family Part's "special expertise in matters related to the family."  N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012).  Accordingly, we will uphold a trial judge's factual findings "if they are grounded in substantial and credible evidence in the record."  N.J. Div. of Child Prot. & Permanency v. D.C.A., 256 N.J. 4, 19 (2023).

We will reverse a Family Part judge's decision on appeal only if the judge's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)); see also N.J. Div. of Child Prot. & Permanency v. D.A., 477 N.J. Super. 63, 80 (App. Div. 2023). We review the trial judge's legal conclusions de novo. See R.G., 217 N.J. at 552; see also D.C.A., 256 N.J. at 19 (according no deference to the trial court's interpretation of N.J.S.A. 30:4C-15.1(a)).

"Children have their own rights, including the right to a permanent, safe and stable placement." N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004). Our courts acknowledge "the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child." Ibid. At times, a parent's interest must yield to the State's obligation to protect children from harm. See N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009).

When terminating parental rights, a Family Part judge must focus on the "best interests of the child standard" and determine whether the Division satisfied all four prongs under N.J.S.A. 30:4C-15.1(a) by clear and convincing

12

evidence. In re Guardianship of K.H.O., 161 N.J. 337, 347-48 (1999); D.H., 469 N.J. Super. at 114-15.

Under N.J.S.A. 30:4C-15.1(a), the Division must prove:

(1)    The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2)    The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;

(3)    The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4)    Termination of parental rights will not do more harm than good.

Judge Stolte correctly summarized the law and properly applied her factual findings in accordance with the case law. See N.J. Div. of Child Prot. & Permanency v. D.C.A., 474 N.J. Super. 11, 29-30 (App. Div. 2022), aff'd, 256 N.J. 4 (2023).

"In a termination of parental rights trial, the evidence often takes the form of expert opinion testimony by psychiatrists, psychologists, and other mental health professionals." N.J. Div. of Child Prot. & Permanency v. R.L.M., 236

13

N.J. 123, 146 (2018). Judge Stolte relied on Dr. Gambone's unrebutted expert testimony and opinions which were based on his evaluations. Additionally, Judge Stolte found other evidence and testimony presented at trial supported Dr. Gambone's opinions.

After carefully reviewing the arguments presented by mother and father, considering the record, and applying the foregoing legal principles, we are satisfied there is no basis to disturb Judge Stolte's well-reasoned decision terminating parental rights. There is nothing in the record supporting the arguments raised by mother and father that the Division failed to present clear and convincing evidence in support of termination under each prong of the statutory best interests of the child test. In fact, mother and father presented no evidence or testimony at trial to refute the Division's testimony and evidence.

Nor do we discern any support in the record for father's argument that the judge impermissibly considered his status as a sex offender in terminating his parental rights. Statements against one's penal interest, as made by father here, are those that tend to "subject the declarant to civil or criminal liability" and consequently are "deemed inherently trustworthy and reliable" because "by human nature, individuals will neither assert, concede, nor admit to facts that would affect them unfavorably." State v. White, 158 N.J. 230, 238 (1999)

(citing N.J.R.E. 803(c)(25)).[2]  Father's statements against his own personal and penal interests were inherently reliable under the circumstances.  Thus, Judge Stolte correctly considered those statements, in part, in deciding to terminate father's parental rights.  More importantly, father's statements were not the sole basis for the judge's decision to terminate his parental rights.

We also reject father's contention that the judge improperly relied on his absence at trial to terminate his parental rights.  Although Judge Stolte noted father's absence from the proceedings, there is no evidence in the record that she relied on such information or drew any adverse inference from that information in rendering her decision.

Judge Stolte painstakingly detailed her reasons in support of the Division's satisfaction of all four prongs under N.J.S.A. 30:4C-15.1(a).  We need not repeat the judge's comprehensive findings, which are amply supported by the record.  Having reviewed the record, we are satisfied Judge Stolte thoroughly and properly analyzed each prong under the best interests of the child test, N.J.S.A. 30:4C-15.1(a), and made sufficient findings of fact based on the clear and convincing evidence presented at trial.

---

[2]  The statement against interest exception was relocated to N.J.R.E. 804(b)(3).

To the extent we have not addressed any of defendants' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division